**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**UNITED STATES OF AMERICA**

**v.** **Case No.: 6:26-cr-128-RBD-DCI**

**SARAH EVELYN DAVIS**

---

## REPORT AND RECOMMENDATION CONCERNING PLEA OF GUILTY

The Defendant, by consent, has appeared before me pursuant to Federal Rule of Criminal Procedure 11, Local Rule 1.02, and *In re: Utilization of Magistrate Judges,* No. 3:21-mc-1-TJC, Doc. 157 (M.D. Fla. Oct. 30, 2024). After cautioning and examining the Defendant under oath concerning each of the subjects mentioned in Rule 11, the Defendant pled guilty to Count One of the single-count Indictment, and I determined that the Defendant entered that plea of guilty knowingly and voluntarily. However, as stated on the record at the plea colloquy, I took under advisement whether to recommend that there exists a factual basis for the plea pursuant to Rule 11(b)(3) ("Before entering judgment on a guilty plea, the court must determine that there is a factual basis for the plea.").

I began the hearing by explaining that I had reviewed the factual basis and elements of the offense and that I harbored serious concerns about whether the facts, as agreed to by the parties, state a sufficient factual basis for each element of the offense to which the Defendant intended to plead guilty. Several of those concerns were stated on the record at the hearing. I then recessed to allow the parties to consider my concerns.

I reconvened and discussed the matter with the parties again. At that point, the parties proffered the video of the offense conduct, which I accepted as evidence and, during another

recess, reviewed. I reconvened once again and conducted the plea colloquy. The Defendant pled guilty, and I found that the plea was knowing and voluntary, but I reserved on the issue of whether a factual basis supported the guilty plea. As stated in this report, I cannot recommend that a factual basis supports the Defendant's guilty plea based on the evidence and argument presented to me and that now exists in the record.

The Defendant pled guilty to a single violation of 18 U.S.C. § 871(a), which reads in relevant part as follows:

> Whoever knowingly and willfully deposits for conveyance in the mail . . . any letter . . . or document containing any threat to take the life of, to kidnap, or to inflict bodily harm upon the President of the United States . . . or knowingly and willfully otherwise makes any such threat against the President [shall be guilty of an offense against the United States].

*See Eleventh Circuit Criminal Pattern Jury Instructions*, Instruction O29, annotations and comments (revised July 21, 2026). The Eleventh Circuit's pattern jury instructions provide that the elements of the offense are:

> (1) the Defendant [mailed] [wrote] [said] the words alleged to be the threat against the President;
>
> (2) the Defendant understood and meant the words as a true threat; and
>
> (3) the Defendant knowingly and willfully [mailed] [wrote] [said] the words.

*Id.* Further, the pattern jury instruction provides that:

> A "threat" is a statement expressing an intention to [kill] [kidnap] [inflict bodily harm upon] the President.
>
> A "true threat" is a serious threat – not idle talk, a careless remark, or something said jokingly – that is made under circumstances that would lead a reasonable person to believe that the Defendant intended to [kill] [kidnap] [inflict bodily harm upon] the President.

*Id.* In dismissing an indictment for a failure to allege a true threat, a court in this district recently articulated the standard for what constitutes a "true threat":

> A "true threat" is "a serious threat—not idle talk, a careless remark, or something said jokingly—that is made under circumstances that would place a reasonable person in fear of" being injured or of another person being injured. *Id.* "The 'true' in that term distinguishes what is at issue from jests, 'hyperbole,' or other statements that when taken in context do not convey a real possibility that violence will follow (say, 'I am going to kill you for showing up late')." *United States v. Albizar Martinez*, No. 25-11781, 2025 WL 2814881, at *4 (11th Cir. Oct. 3, 2025) (quoting *Counterman v. Colorado*, 600 U.S. 66, 74, 143 S.Ct. 2106, 216 L.Ed.2d 775 (2023)). "True threats, in other words, are 'serious expressions conveying that a speaker means to commit an act of unlawful violence.'" *Id.*
>
> Typically, whether a statement constitutes a true threat is a question for the jury. *United States v. Hussaini*, No. 19-60387-CR, 2022 WL 138474, at *8 (S.D. Fla. Jan. 14, 2022) (collecting cases). However, there are situations where an indictment is "so plainly deficient" that it fails to allege a true threat as a matter of law. *Id.* at *7; *United States v. O'Dwyer*, 443 F. App'x 18, 20 (5th Cir. 2011); *United Stock*, 728 F.3d 287, 298 (3d Cir. 2013).

*United States v. Joudeh*, 839 F. Supp. 3d 1343, 1346 (M.D. Fla. 2026).[1]

Here, the Indictment reads as follows:

> On or about April 8, 2026, in the Middle District of Florida, the defendant,
>
> SARAH EVELYN DAVIS,
>
> did knowingly and willfully make a threat to take the life of the President of the United States in a live-stream TikTok video online, specifically stating: "but when it comes to Trump, I'll fucking kill your ass, bitch" and "I got a gun just for you, only for you, Trump" and "gun rights for me to shoot your ass," or words to that effect, with the intent to communicate a true threat of violence and with recklessness as to whether the communication would be viewed as a true threat of violence.
>
> In violation of 18 U.S.C. § 871(a).

[1] Of course, the standard for considering a motion to dismiss an indictment under Federal Rule of Criminal Procedure 12(b)(3)(B)(v) is different than determining whether there is a factual basis for a plea. For one, in the motion to dismiss context, the Court is limited to the four corners of the indictment. But in determining whether a factual basis for a plea exists, the Court may consider the evidence the parties provide. *See United States v. Lopez*, 907 F.2d 1096, 1100 (11th Cir. 1990) ("The standard for evaluating challenges to the factual basis for a guilty plea is whether the trial court was presented with evidence from which it could reasonably find that the defendant was guilty.") (citing *United States v. Owen*, 858 F.2d 1514, 1517 (11th Cir.1988)).

Doc. 1. The government explained at the hearing that the Defendant was charged with acting with a *mens rea* of recklessness consistent with *Counterman v. Colorado*, 600 U.S. 66, 82 (2023) ("That standard, again, is recklessness. It offers 'enough 'breathing space' for protected speech,' without sacrificing too many of the benefits of enforcing laws against true threats.") (quoting *Elonis v. United States*, 575 U.S. 723, 748 (2015)).

It's worth noting that a violation of § 871 seems fairly straightforward: making a threat to kill the President. But to find a factual basis for the offense, a court must find factual support for a fairly complex set of propositions: (1) that the defendant used words that constitute a "threat"; (2) that the defendant made (or communicated) the threat in a way that violates the statute; (3) that the threat was objectively a "true threat" considering the circumstances; (4) that the defendant had a subjective *mens rea* concerning the fact that she made a "true threat"—*i.e.*, at least recklessness; (5) that the defendant made the threat knowingly; and (6) that the defendant made the threat willfully. "Threat" and "true threat" have separate definitions. Some of those concepts (such as recklessness, knowledge, and willfulness) are themselves the subject of separate jury instructions explaining what they mean. Why so complex? Because Congress criminalized pure speech through § 871, and the First Amendment requires no less. [2]

[2] Of course, "it is common for different portions of a statute to require different levels of intent—so a reading that one element of a crime requires general intent while another element requires specific intent is not out of the ordinary." *United States v. Dell*, 6:25-cr-126-RBD-LHP, Doc. 130 at 3 (M.D. Fla. October 16, 2026) (discussing the requisite intent for a threat statute in light of an order of acquittal following a bench trial) (citing *United States v. Bailey*, 444 U.S. 394, 405–06 (1980) ("[E]ven time-honored common-law crimes consist of several elements, and complex statutorily defined crimes exhibit this characteristic to an even greater degree. Is the same state of mind required of the actor for each element of the crime, or may some elements require one state of mind and some another? . . . . [T]he question of the kind of culpability required to establish the commission of an offense [must] be faced separately with respect to each material element of the crime." (cleaned up))).

Here, in relation to the factual basis, I considered: (1) the agreed-upon factual basis in the plea agreement; (2) the video of the offense conduct provided by TikTok to the government; and (3) the Defendant's answers to my questions during the plea colloquy.

The factual basis in the plea agreement contains six paragraphs. The first paragraph is essentially the language of the Indictment itself written as a single, long sentence. By that paragraph, the Defendant agreed to the allegations in the Indictment.

The next two paragraphs of the factual basis explain how the Defendant's conduct came to the attention of the government. On April 8, 2026, TikTok made a voluntary emergency disclosure of information to the government. Though the factual basis contains quoted language without attribution to a source, it appears that TikTok alleged in the emergency disclosure that the Defendant "made death threats towards President Donald Trump and Republicans during a livestream. The user was also seen brandishing a handgun during the livestream."

The fourth paragraph is essentially excerpts of the Defendant's statements from the video that TikTok disclosed to the government.

The fifth paragraph explains that the U.S. Secret Service interviewed the Defendant on April 10, 2026 at her residence.[3] While the Defendant was not initially at the residence, she travelled there to meet with agents. The Defendant arrived crying and apologized for her conduct and, after being calmed, explained that she was aware of the video threats but did not fully remember what she said due to heavy drinking earlier in the day. The Defendant also explained that she suffered from mental health problems and that she was taking medication prescribed by a doctor.

---

[3] The Defendant was indicted on May 20, 2026, and arrested on May 26, 2026. The government did not seek the Defendant's pretrial detention, and she remains on conditions of release.

The sixth paragraph is a boilerplate paragraph that explains that there may be more facts in the case.

Having considered those facts and expressing concern about whether those facts provided a factual basis for the guilty plea, I provided the parties with an opportunity to supplement the record with additional evidence, contextual information, or argument. In response, the parties asserted that the factual basis was sufficient as is. However, the parties provided me with the actual video that the government received from TikTok.

I reviewed the video. In the three minute and eight second video, the Defendant appears alone in a room addressing a camera. The Defendant appears obviously intoxicated. She slurs, makes odd facial expressions, and has disconnected speech and thought processes. The Defendant appears to be in the midst of a mental health crisis. The gun in the video does not appear to be real.[4]

Nevertheless, given the parties' insistence that the Defendant be permitted to plead guilty to the single-count Indictment, I conducted the plea colloquy. In doing so, I asked the Defendant several questions concerning the factual basis for her plea. In responding to me, the Defendant was sometimes crying and at other times presented with a flat affect. The Defendant agreed that the factual basis in the plea agreement was true and correct. The Defendant answered affirmatively the questions titled, Personalization of Elements. *See* Doc. 35 at 12. Upon additional questioning, the Defendant confirmed that when she made the video she was intoxicated on alcohol and taking her psychotropic prescription medications. Due to her intoxication, the Defendant stated that she could not independently recall what she said in the video but knew generally that it was

---

[4] The parties agreed in the plea agreement that the "handgun" that TikTok flagged was actually a novelty cigarette lighter.

threatening. After being read the jury instruction for willfulness, the Defendant agreed that she acted willfully when she made the video.

Thereafter, I found that the Defendant entered the plea of guilty knowingly and voluntarily, but I withheld a finding and recommendation concerning a factual basis.

The Eleventh Circuit has explained as follows concerning the requirement that a court find a factual basis for a guilty plea:

> The Supreme Court has instructed that a judge accepting a plea must determine whether "the conduct which the defendant admits constitutes the offense ... to which the defendant has pleaded guilty." *McCarthy,* 394 U.S. at 467, 89 S.Ct. at 1171; *accord* Fed.R.Crim.P. 11(f); *see United States v. Terzado–Madruga,* 897 F.2d 1099, 1125 (11th Cir.1990); *Dismuke v. United States,* 864 F.2d 106, 107 (11th Cir.1989). The purpose of this requirement is to protect a defendant who mistakenly believes that his conduct constitutes the criminal offense to which he is pleading. *McCarthy,* 394 U.S. at 467, 89 S.Ct. at 1171. The standard for evaluating challenges to the factual basis for a guilty plea is whether the trial court was presented with evidence from which it could reasonably find that the defendant was guilty. *United States v. Owen,* 858 F.2d 1514, 1517 (11th Cir.1988) (per curiam); *see Dayton,* 604 F.2d at 938 (trial court's satisfaction that plea had factual basis reviewed for abuse of discretion).

*United States v. Lopez*, 907 F.2d 1096, 1100 (11th Cir. 1990). So, the question remains whether the evidence before the Court is sufficient for the Court to reasonably find that the Defendant is guilty of a violation of § 871(a). *See Canales v. United States*, 2025 WL 1040839, at *6 (S.D. Fla. Apr. 8, 2025) ("A 'factual basis for the plea' simply means that 'there must be evidence from which a court could reasonably find that the defendant was guilty'—but 'uncontroverted evidence of guilt' is not required.") (quoting *Owen*, 858 F.2d at 1516-17).

The factual basis before the Court is devoid of context that would indicate that the Defendant's statements—though containing language that a reasonable person could determine was a "threat"—constituted a "true threat" and a violation of § 871(a). So far as I can tell, the Defendant conducted the livestream on TikTok alone in her bedroom. The video itself contains

no contextual information unique to a social media platform such as TikTok; for example, there is no indication in the live-streamed video that the Defendant had any audience or that the Defendant interacted with any person. Indeed, no evidence was proffered that the Defendant's livestream was viewed by any person, recorded by the Defendant, sent to any person, posted online and made available for viewing by any person at a later time, or was viewed, able to be viewed, or intended to be viewed by any person other than the TikTok employee (or perhaps just the automated system) who flagged the livestream and voluntarily disclosed a video of the livestream to the government. Nor does the agreed factual basis in the plea agreement contain any aggravating contextual information, other than the conclusory assertion that the Defendant acted "with the intent to communicate a true threat of violence." Context matters in determining whether this is a "true threat" criminalized by the statute. *See Watts v. United States*, 394 U.S. 705, 708 (1969) ("We agree with petitioner that his only offense here was 'a kind of very crude offensive method of stating a political opposition to the President.' Taken in context, and regarding the expressly conditional nature of the statement and the reaction of the listeners, we do not see how it could be interpreted otherwise."). Is there a factual basis for making a threat if there is no evidence of any listeners, recipients, or intended recipients? The statute itself contemplates placing a written threat to kill the President in the mail, or "otherwise mak[ing] any such threat against the President."

Additionally, the context that exists in the evidence militates against a recommendation that the facts support the Defendant having made a true threat. I have viewed the video in its entirety. The Defendant is clearly intoxicated and appears to be in the midst of a psychiatric episode. And the undisputed facts establish that the Defendant *was* intoxicated on a mixture of excessive alcohol and prescription psychotropic medication when she made the livestream, suffers from bi-polar disorder, and did not possess a firearm as alleged by TikTok. Thus, I am not satisfied

that a reasonable person—considering those circumstances—would believe that the Defendant intended to kill the President.[5]

Also, having watched the entirety of the video, it appears that the threatening language used by the Defendant is conditioned upon incredibly remote precipitating events occurring; it is language that, taken in context, does not convey a real possibility that violence will follow. The Indictment charges three phrases as the offense conduct that constitutes the threat. Though charged in the conjunctive, it is the government's position (as is standard) that each phrase, standing alone, supports the charged offense. And certainly, those three phrases, devoid of context, appear to be threats. But each, in the context of the video as a whole, are conditional. First, the threats are conditioned upon the President of the United States appearing on the Defendant's TikTok livestream. In other words, the Defendant stated that if the President came on to her TikTok livestream, she would kill him, and she pointed her fake gun at the screen. And although her speech was disconnected and halting, one could plausibly assert that the Defendant also threatened to kill the President if he went to the University of Central Florida. The first posited condition borders on the ridiculous. The second posited condition is plausible, but there is no evidence in this case that a visit to that university by the President was impending or even under consideration.[6] While a conditional threat *can* be a true threat, the nature of the precipitating condition matters in the overall context. Here, neither precipitating condition was likely, and only one was even plausible.

---

[5] I set aside the issue of a defense based upon intoxication, which the Defendant arguably waived during the plea colloquy. However, I have not participated in a change of plea hearing where the agreed facts in the plea agreement arguably negated the necessary *mens rea* of willfulness, while the defendant simultaneously asserted that she acted willfully.

[6] A Google search reveals that President Trump visited UCF's campus on one occasion, in 2016.

Further, the speech at issue here was, at its core, political. In considering a threat made in the context of a political statement, I find myself always returning to the Supreme Court's decision in *Watts*:

> But whatever the 'willfullness' requirement implies, the statute initially requires the Government to prove a true 'threat.' We do not believe that the kind of political hyperbole indulged in by petitioner fits within that statutory term. For we must interpret the language Congress chose 'against the background of a profound national commitment to the principle that debate on public issues should be uninhibited, robust, and wideopen, and that it may well include vehement, caustic, and sometimes unpleasantly sharp attacks on government and public officials.' *New York Times Co. v. Sullivan*, 376 U.S. 254, 270, 84 S.Ct. 710, 721, 11 L.Ed.2d 686 (1964). The language of the political arena, like the language used in labor disputes, *see Linn v. United Plant Guard Workers of America*, 383 U.S. 53, 58, 86 S.Ct. 657, 15 L.Ed.2d 582 (1966), is often vituperative, abusive, and inexact. We agree with petitioner that his only offense here was 'a kind of very crude offensive method of stating a political opposition to the President.' Taken in context, and regarding the expressly conditional nature of the statement and the reaction of the listeners, we do not see how it could be interpreted otherwise.

*Watts v. United States*, 394 U.S. 705, 708 (1969).

In that overall context, and specifically as related to the concerns I raise, I must make a recommendation concerning two matters. The first, objective: whether there is a factual basis to support a determination that the Defendant made a threat that, under the circumstances, would lead a reasonable person to believe that the Defendant intended to kill the President. The second, subjective: if the threat was a true threat, whether the Defendant was reckless in making it.

As to the first consideration, for the reasons set forth herein, I cannot in good faith recommend that the words of the Defendant in the context she made them constitute a true threat. I am cognizant of the temptation of a judge to substitute himself as the reasonable person. But the fact remains: I watched the video, I considered the context, and I do not believe that the evidence before the Court would lead a reasonable person to believe that the Defendant intended to kill the President. Indeed, there is not even any evidence that the Defendant had any audience (or intended

audience) for the livestream she made alone in her bedroom; it may be that TikTok's internal monitor was her only audience.[7] As for the second consideration, I cannot in good faith recommend that the Defendant made the threat recklessly, assuming the threat is a true threat. As the Supreme Court stated in *Counterman*, "reckless defendants have done more than make a bad mistake. They have consciously accepted a substantial risk of inflicting serious harm." *Counterman*, 600 U.S. at 80. Given the evidence before the Court concerning the context in which the statement was made, I cannot say that there is a factual basis that would lead a reasonable person to conclude that the Defendant consciously accepted a substantial risk of inflicting serious harm.

All of that said, it might be that additional evidence exists that would provide context to the threat the Defendant made. I allowed the parties an opportunity to present additional evidence, and they provided the video. There may be more evidence, including more records from TikTok. Nothing in this report and recommendation precludes the parties from providing the Court with additional evidence. Further, the parties did not provide legal briefing (though I offered them the opportunity), and it might be that, if they take the opportunity, the parties could provide a legal brief that convinced the Court that the factual basis is sufficient as is. And, of course, the Court may question the Defendant directly.

---

[7] This also leads to a concern as to whether the Defendant even "made" the threat under the statute. The only example of making the threat provided by the statute is placing a written threat in the mail. Once a written threat is placed in the mail, a defendant has made it, whether it reaches its intended audience. Many contemporary cases involve *posting* threats on social media—the threat is posted publicly and made available for anyone to see at any time. But when a person makes a statement on a livestream (a potentially much more ephemeral medium), if there is no evidence that the statement had a live audience or was recorded and posted for later viewing, has the threat been "made"?

I therefore respectfully **RECOMMEND** that the plea of guilty not be accepted because there is not a sufficient factual basis as required by Rule 11(b)(3).

However, if the Court finds that there is a factual basis for the plea, I would recommend that the Court may accept the guilty plea because the Defendant has pled guilty and I have completed all other portions of the plea colloquy and found that the plea was knowing and voluntary.

The Defendant remains on conditions of release pending further proceedings.

Date: November 2, 2026

DANIEL C. IRICK
UNITED STATES MAGISTRATE JUDGE

**NOTICE**

A party waives the right to challenge on appeal a finding of fact or conclusion of law adopted by the district judge if the party fails to object to that finding or conclusion within fourteen days after issuance of the Report and Recommendation containing the finding or conclusion.

Copies furnished to:
Counsel of Record